(97 South. 791)

## ALABAMA POWER CO. v. CONINE et al.
### (5 Div. 856.)

(Supreme Court of Alabama. Oct. 11, 1923. Rehearing Denied Nov. 15, 1923.)

I. Negligence ⬤➾II—Essentials of "wanton-ness" stated.

For one's conduct to · constitute "wanton-ness," he must be conscious of his conduct and conscious from his knowledge of existing condi-tions that injury will likely or probably result from his conduct, and with reckless indifference to consequences must consciously and intention-ally do some wrongful act or omit some known duty which produces the injurious effect.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Wan-tonness.]

2. Electricity ⬤➾19(5)—Consciousness of the dangerous conditions essential for wantonness not shown.

Evidence, in action for death from charged electric wire, held not to show that the com-pany's superintendent was conscious of dan-gerous condition of the wire, necessary for the charge of wantonness.

3. Electricity ⬤➾19(2)—Count of complaint regarded as a charge of wantonness.

Count of complaint for death from charged electric wire held regarded as a charge of wantonness, and not of simple negligence.

4. Electricity ⬤➾19(12) — Contributory negli-gence held question for jury.

Evidence, in action for death from charged electric wire, held to make a jury question of contributory negligence dependent on whether deceased seized the wire knowing of its danger-ous condition, notwithstanding assurance of the electric company's superintendent that there was no danger, depending in part on whether he took hold of it after knowing that the superin-tendent had been dangerously shocked.

Appeal from Circuit Court, Tallapoosa County; S. L. Brewer, Judge.

---

⬤➾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by Alberta G. Conine, administratrix, and J. J. Langley, administrator, of W. M. Conine, deceased, against the Alabama Power Company. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

Count 3 A of the complaint is as follows:

"3 A. The plaintiffs claim of the defendant the further sum of $100,000 damages, for that on the 9th day of August, 1919, the defendant was maintaining and operating an electric wire in the town of Camp Hill, Ala.; that said wire, or one of the said wires, became detached from its support or was broken, and on said date a portion of the same was on the ground in a public place in said town of Camp Hill, and while said wire was on the ground the defendant, its agent, servants, or employees, while acting within the line and scope of their duties under such employment, permitted said wire to be and remain highly charged with electricity; and plaintiffs aver that the place where said wire was on the ground was a place where people in large numbers were frequently in the habit of going, which fact was known to the defendant's agents, servants, or employees; that said wire, while it was so on the ground in said public place in the town of Camp Hill, Ala., was charged with a high and dangerous voltage of electricity; the defendant, its servants, agents, or employees, with knowledge that said wire was on the ground where pedestrians going to and along said public place, and knowing said wire was charged with electricity, and it was dangerous for persons to come in contact therewith, permitted said wire to remain on the ground highly charged with electricity, and while said wire was so on the ground, charged with electricity as aforesaid, plaintiffs' intestate came in contact with said wire and the current of electricity, and was killed."

Pleas 2, 3, 4, and A, are as follows:

"(2) The plaintiffs should not have and recover against the defendant in this action, for that the plaintiffs' intestate was guilty of negligence which proximately contributed to his injury and death in this, intestate was a reasonably prudent man, and the circumstances attending the injury and death of intestate were such as would impress such a man with knowledge of the fact that the alleged wire was highly charged with electricity, and to the extent that for a man to seize said wire with his hands would probably result in death to him, or great bodily harm, and notwithstanding such circumstances existed, intestate seized said wire with his hands and thereby proximately contributed to his injury and death.

"(3) The plaintiffs ought not to further maintain this action against the defendant, for that the plaintiffs' intestate was guilty of negligence which proximately contributed to his injury and death, in this, intestate had just at the time seen one Rodgers seize the wire described and mentioned in the complaint with his hand, and saw that the said Rodgers was immediately severely shocked and thrown to the ground, and that he could not loose his hand from the wire, and that he was knocked senseless, and while said wire was still in Rodgers' hand, and Rodgers was lying on the ground, intestate seized said wire in his own hand and was at once electrocuted by shock of electricity which was

210 ALA.—21

on or in said wire. Wherefore defendant says and alleges that the intestate was guilty of negligence which proximately contributed to his injury and death.

"(4) The plaintiffs ought not to further maintain this action against defendant, for that the plaintiffs' intestate was himself guilty of the negligence which proximately contributed to his injury and death, in this, the intestate knew, or the circumstances attending his injury and death were such as that, if the intestate had exercised reasonably prudent care, he would have known, that said alleged wire described in the complaint was highly charged with electricity or electric current, and that to seize said wire with his hands would probably result in death to him or in great bodily harm, and notwithstanding all that is above alleged the intestate seized said wire with his hand, and was thereby guilty of negligence which proximately contributed to his death.

"(A) The plaintiffs should not have and recover against the defendant in this action, for that the plaintiffs' intestate was guilty of negligence which proximately contributed to his injury and death, in this, that plaintiffs' intestate, with knowledge that the said electric wires were lying on the ground at the point where he suffered said alleged injuries, and with knowledge that the said wires were charged with a high and dangerous voltage of electricity, and with a knowledge that, should he come in contact with said electric wires, serious bodily injury or death would probably result to him, and that, notwithstanding such circumstances and knowledge on the part of plaintiffs' intestate, he seized the wire with his hand, and thereby proximately contributed to his injury and death."

N. D. Denson & Sons, of Opelika, and Martin, Thompson & Turner, of Birmingham, for appellant.

A plaintiff ought not to recover in a negligence case, unless he proves the case as alleged. Stowers v. Dwight Mfg. Co., 202 Ala. 252, 80 South. 90. The substantial distinction between simple negligence and wanton and willful misconduct lies in the fact that simple negligence is an inadvertent act or omission, while wanton or willful conduct is characterized as such by the state of mind with which the act or omission is done. McNeil v. Munson S. S. Co., 184 Ala. 420, 63 South. 992; L. & N. R. R. Co. v. Brown, 121 Ala. 221, 25 South. 609; B. R., L. & P. Co. v. Brown, 150 Ala. 327, 43 South. 342; L. & N. R. R. Co. v. Smith, 163 Ala. 141, 50 South. 241; Ala. Cent. Co. v. Humphries, 169 Ala. 369, 53 South. 1013; M., J. & K. C. R. R. Co. v. Smith, 153 Ala. 127, 45 South. 57, 127 Am. St. Rep. 22; Tobler v. Pioneer Min. Co., 166 Ala. 482, 52 South. 86. The proximate cause of an event must be understood to be that which in its natural and continuous sequence, unbroken by any new cause, produced that event, and without which the event would not have occurred. Western Ry. Co. v. Mutch, 97 Ala. 194, 11 South. 894, 21 L. R. A. 316, 38 Am. St. Rep. 179; Decatur, etc., Co. v. Mehaffey, 128 Ala. 242, 29 South.

646; L. & N. Ry. Co. v. Quick, 125 Ala. 553, 28 South. 14; Crowley v. City, etc., 149 Ala. 613, 43 South. 359, 10 L. R. A. (N. S.) 801; Golson v. Covington Mfg. Co., 205 Ala. 226, 87 South. 439. Where one voluntarily and wrongfully places himself in a dangerous position, thereby assuming its risk, and fails to use the proper means to discover the peril, or, on discovering it, fails to make exertions to extricate himself, he is guilty of contributory negligence. Carter v. Chambers, 79 Ala. 223; B. R., L. & P. Co. v. Williams, 158 Ala. 381, 48 South. 93; Adler v. Martin, 179 Ala. 97, 59 South. 597; Frauenthal v. Laclede, 67 Mo. App. 1.

James W. Strother, of Dadeville, and Barnes & Walker, of Opelika, for appellees.

Count 3a is a good count in simple negligence. Sheffield v. Morton, 161 Ala. 153, 49 South. 772; B. R., L. & P. Co. v. Cockrum, 179 Ala. 372, 60 South. 304; B. R., L. & P. Co. v. Jackson, 9 Ala. App. 588, 63 South. 782. The question of wantonness was properly submitted to the jury. Mobile Elec. Co. v. Fritz, 200 Ala. 692, 77 South. 235; Bowles v. Lowrey, 5 Ala. App. 555, 59 South. 696.

ANDERSON, C. J. [1, 2] This is the second appeal in this case. See 207 Ala. 435, 93 South. 22. The trial court submitted this case to the jury on the wanton as well as the simple negligence counts by refusing the general charge of the defendant as to each of the counts. The plaintiff relied upon the conduct of the defendant's superintendent or representative, Rodgers, as establishing his cause of action; therefore, in order to constitute wantonness, it was necessary for the plaintiff to show that said Rodgers was conscious of his conduct and conscious from his knowledge of existing conditions that injury would likely or probably result from his conduct, and with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result. Birmingham L. &. P. Co. v. Cockrum, 179 Ala. 373, 60 South. 304, and cases there cited. The proof not only fails to show that Rodgers was conscious of the fact that the wires suspended from the pole south of the burned building, or gap in said wires, was so heavily charged as to render the same dangerous to human life, but shows that he was under the impression that the same was not charged and was not in a dangerous condition. True, he was informed just before the fatal injury that said wires were heavily charged, but he immediately attempted to remove the danger when he and Conine met their death, but the entire record negatives rather than affirms that he was conscious of the dangerous condition of the wire prior to that time. We therefore hold that the trial court erred in refusing the defendant's requested general charge as to each of the wanton counts.

[3] Since the defendant was entitled to the general affirmative charge as to the wanton counts, it is needless to discuss the rulings upon the demurrers thereto. We suggest, however, that while count 3 A was treated as a simple negligence one, we regard it as a charge of wantonness.

The trial court did not err in overruling the plaintiff's demurrer to pleas 2 and 4. Osborne v. Ala. Co., 135 Ala. 571, 33 South. 687.

[4] There was sufficient evidence to afford an inference of negligence on the part of Rodgers in leaving the wires hanging on the south pole without using precautionary measures to see that they would not become charged, or without clipping them high up, as was done with those on the north side. Indeed, counsel for the appellant do not contend that the plaintiff did not make out a case of simple negligence, but insist that the general charge for the defendant should have been given as to these counts because the intestate was guilty, as matter of law, of proximate contributory negligence as set up in special pleas 3 and A. Independent of the replications thereto and questioning the aptness or sufficiency of same to plea 3, we do not think that said pleas, or either of them were proven without dispute so as to deprive the jury of passing upon this phase of the case. As to plea 3, it was a question for the jury to determine whether or not the intestate saw and knew that Rodgers had been shocked and knocked to the ground before seizing the wire in order to relieve him, or whether or not the intestate was co-operating with Rodgers in an effort to remove the wire, and seized the same contemporaneous with him, at least before he discovered that said Rodgers had been severely shocked and knocked to the ground. One of the witnesses does testify that the intestate seized the wire after Rodgers had been shocked and was falling or had fallen, but some of the other witnesses left it open for the jury to find that the intestate seized the wire before he knew that Rodgers was shocked and had fallen. For instance, the evidence of J. W. Pepper left it open to the jury to find that the intestate seized the wire before or at the same time Rodgers did, and before Rodgers had been knocked to the ground, or before he (the intestate) discovered that Rodgers had been severely shocked.

As to plea A, it was a question for the jury to determine whether or not the intestate seized the wire with the knowledge that it was charged with "a high and dangerous voltage of electricity," as charged in said plea. True, the intestate and Rodgers were both informed, just before going to the wire, that it was charged and had emitted sparks; but the intestate, after he and Rodgers had gotten their information, was repeatedly assured by Rodgers that there was no danger from said wire, and as Rodgers was in charge of the plant

and presumably had a superior knowledge of electricity, the jury could have inferred that the intestate relied on his assurance, and was not therefore conscious that it was charged with a high and dangerous voltage when taking hold of same, notwithstanding he had been previously informed that it was charged—provided, of course, he seized the same before discovering that Rodgers had been shocked and knocked down, as discussed in dealing with plea 3. If he seized the wire after he discovered that Rodgers had been dangerously shocked and knocked down, he, of course, did so with the knowledge that it was dangerously charged nothwithstanding the previous assurance of Rodgers that it was not dangerous, but which fact, as above demonstrated, was a question for the jury.

As to whether or not the intestate seized the wire with a knowledge of the danger, but in order to rescue Rodgers, and whether or not he would be chargeable with negligence under such conditions, although Rodgers was guilty of negligence in placing himself in a position of peril, is a question discussed in appellant's supplemental brief, but one not presented by the pleading.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

SAYRE, GARDNER, and MILLER, JJ., concur.